**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| **CRISPERA J1 ASSETS LLC,** | |
| Plaintiff, | Civil Action No. 2:26-cv-00656 |
| v. | **JURY TRIAL DEMANDED** |
| **SAMSUNG ELECTRONICS CO., LTD. and SAMSUNG ELECTRONICS AMERICA, INC.,** | |
| Defendants. | |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Crispera J1 Assets LLC ("Crispera" or "Plaintiff"), by and through its undersigned counsel, files this Complaint for Patent Infringement against Defendants Samsung Electronics Co., Ltd. ("SEC") and Samsung Electronics America, Inc. ("SEA") (collectively, "Samsung" or "Defendants"), and alleges as follows:

**NATURE OF THE ACTION**

1.     This is an action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. § 1 et seq., including without limitation 35 U.S.C. §§ 271, 281, 283, 284, and 285.

2.     The Patents-in-Suit claim specific inventions addressing the technical problem of connecting a particular physical or displayed item to item-specific, user-configured computerized actions, including a machine-readable code affixed to or displayed on an item; a services account or server storing customized information specific to that item and its user; scanning that transmits code data together with device or account identity to the server; server-side generation of derived information that is not the same as the stored customized information; and return of that derived

1

output to the scanning device or to an addressed recipient. These patented innovations are now widely practiced across the consumer electronics, smart home, retail, and payments industries, including in the products and services made, used, tested, sold, offered for sale, and/or imported by Defendants.

3.      Samsung has built that architecture into everyday features of its products. A Galaxy smartphone owner who wants to share a Wi-Fi network with a guest need not reveal or type the network password: Samsung instructs that "[i]nstead of typing the password, you can generate a QR code that others can scan to connect instantly." (https://www.samsung.com/ae/support/mobile-devices/how-to-share-your-wi-fi-password-without-typing-it/  (last visited August 5, 2026).) The owner's phone generates and displays on its screen a machine-readable code from the credentials the owner has entered into the device, and a guest who scans that code is connected to the owner's network. A purchaser of a Samsung home appliance likewise registers that appliance by scanning the QR code the appliance carries ("Tap QR Code Scan and recognize the QR code of the home appliance to be connected"), which links that specific appliance to the purchaser's Samsung Account and SmartThings service. (https://www.samsung.com/latin_en/support/apps-services/how-to-register-home-appliances-in-the-smartthings-app/) (last visited August 5, 2026).) And a SmartThings user may admit a guest to the user's smart home through a code that, on information and belief, is generated from settings held in the user's account, remains valid for only five minutes before it regenerates, and is available to one person only, so that what a scan returns is not a fixed payload printed in ink or pixels but a response generated by Defendants' systems from account-held, user-configured information. These features, and the others identified below, are addressed limitation by limitation in the claim charts attached as Exhibits G through L.

4.      Plaintiff seeks damages adequate to compensate for Defendants' infringement, in no event less than a reasonable royalty, together with enhanced damages, attorney fees, costs, pre-judgment and post-judgment interest, permanent injunctive relief, and a compulsory ongoing royalty for any continuing post-judgment infringement.

## THE INVENTOR, JACKSON L. CRISP

5.      The inventions claimed in the Patents-in-Suit are the work of a single, independent inventor, Jackson L. Crisp. Mr. Crisp was raised in Cheyenne, Wyoming. As a child, he told his mother that he wanted to be "an engineer and a football player," and he became both. School did not come easily: teachers labeled him "untrainable" and "unteachable," and administrators told his mother that he was not college material, largely because standardized, time-limited tests did not suit the way he learned. His mother worked with him individually until he learned to teach himself, and he turned his grades around in high school, where, standing six feet eight inches tall by the ninth grade, he competed in football, basketball, and track and field. By his own account, football was never the end itself; it was the means to fund an elite engineering education. (Recorded interviews of Jackson L. Crisp, https://www.youtube.com/watch?v=1m4y4rxo43w (last visited August 5, 2026); https://www.youtube.com/watch?v=3Wq7NsRwaHU  (last visited August 5, 2026) (collectively, the "Crisp Interviews").)

6.      Mr. Crisp set his sights on the Colorado School of Mines in Golden, Colorado, a premier public R1 research university. His standardized test scores fell short of the school's ordinary admissions bar, and he was admitted only after his football coach personally vouched for him, and then only on academic probation. Mr. Crisp answered with a 3.8 grade-point average in his freshman year, which lifted his probation and earned him a full academic scholarship on merit, permitting him to relinquish his athletic scholarship so that it could go to another player. On the

field, he played left offensive tackle, the position charged with protecting the quarterback's blind side. A self-described late bloomer, he grew into his frame as an upperclassman, was selected for a Division II all-star game, and trained alongside University of Colorado players and Denver Broncos linemen, including All-Pro tackle Gary Zimmerman. At a regional pre-draft combine, by his account, he tested among the top prospects at his position, running the 40-yard dash in the high 4.8-second range at roughly 315 to 320 pounds and completing a reported 42 repetitions on the 225-pound bench press. He graduated in 1995 with a degree in mechanical engineering, with honors, having spent his college summers interning at Hewlett-Packard. (Crisp Interviews.)

7.      Mr. Crisp nonetheless went undrafted, in a draft year in which offensive tackles unusually remained on the board; the Pittsburgh Steelers' offensive line coach called during the middle rounds to say the team intended to select him, but the call to the podium never came. The day after the draft concluded, the New York Jets signed him as a free agent. He reported to the Jets' training camp at Hofstra University and earned his way deep into a roster stocked with veterans of storied careers, including Ronnie Lott, Boomer Esiason, and Art Monk, under head coach Pete Carroll. At the final cuts, the coaching staff told him that he had outperformed expectations but that the team's investment ran with a drafted player at his position, and he was assigned to the National Football League's developmental league in Europe, where he earned a starting position. There, his molded cleats having failed to arrive, he agreed to wear borrowed screw-in cleats for a scrimmage; on the first play, his foot caught in the turf and he suffered a complete tear of the medial collateral ligament in his knee. During his rehabilitation, surgery on a shoulder he had fractured in a ninth-grade wrestling match, and that had healed in an altered position, went beyond the limited procedure he had been promised, and the surgeon told him

afterward that he would never play football again. His playing career was over in his mid-twenties. (Crisp Interviews; https://www.purposegraciouslyrevealed.com/2135897/episodes/ 13029865-17-rising-above-from-nfl-triumphs-to-empowering-the-world-with-jackson-crisp (last visited August 5, 2026); https://eyelasvegas.com/from-nfl-to-philanthropy-jackson-crisps-journey-of-heart-centered-living-and-community-advocacy/ (last visited August 5, 2026).)

8.     Mr. Crisp then returned to engineering full time. Hewlett-Packard, which had kept a position available for him throughout his football pursuit, hired him into manufacturing research and development and, later, engineering marketing. Over an engineering and project-management career spanning more than twenty-five years, Mr. Crisp served as a project engineer at Chevron responsible for a Southern California oil field of approximately 800 active wells with roughly $40 million in annual project budgets; managed projects and facilities for Aera Energy, one of California's largest oil and gas producers; delivered projects for Southern California Edison; and managed a portfolio of twenty-five to thirty-five concurrent projects at the California campus of Sandia National Laboratories, one of the nation's premier national-security laboratories. (Crisp Interviews.)

9.     Mr. Crisp is also a lifelong inventor who has designed and brought physical products to market and patented other inventions. The invention at the heart of this case came to him around 2010: the recognition that any ordinary item, whether a for-sale sign in a front yard, a business card, a label, or even an item displayed on a screen, could carry a scannable code linking it to an account on a networked system, where the item's owner decides in advance what a scan should do: place a call, send a message, open a page, or return exactly the information the owner chooses. At the time, this was a contrarian idea. QR codes were then a curiosity in the United States, and most phones required a third-party application even to read one. Mr. Crisp worked side

by side with his patent attorney on the specification and filed his first provisional application on October 15, 2011, a second provisional application on January 22, 2012, and his utility application on October 15, 2012.

10. Mr. Crisp then did what few individual inventors manage: he kept his patent family alive, without interruption, for nearly fifteen years, prosecuting application after application and paying the fees from a working project manager's salary. On February 4, 2020, more than eight years after his first filing, U.S. Patent No. 10,552,715, the parent of the Patents-in-Suit, issued. Within months, a global pandemic had made pointing a phone camera at a QR code one of the most familiar gestures in American life, and the architecture Mr. Crisp described in his 2011-2012 filings, a scannable code on an item linked through a network to an account holding user-configured information and actions, had become the mechanism by which consumers connect physical things to computerized services. Each of the six Patents-in-Suit descends directly from those filings, and the family remains active today.

11. Mr. Crisp has also worked to bring his inventions to market, founding Encoded Inc., a technology startup offering QR- and NFC-integrated products and services, and engaging a software developer to build an application practicing the patented methods; he also founded Crisp Global Inc., a personal and business empowerment company through which he speaks to students, athletes, and business audiences. Mr. Crisp serves as Vice President of the Las Vegas chapter of the NFL Alumni Association, which supports retired players and runs youth community programs, and where he has served on the board of, and now serves as an advisor to, Unsilenced Voices, a nonprofit combating domestic violence and human trafficking. (https://www.nflavegas.org/jackson-crisp (last visited August 5, 2026); https://eyelasvegas.com/from-nfl-to-philanthropy-jackson-crisps-journey-of-heart-centered-

living-and-community-advocacy/ (last visited August 5, 2026); https://www.purposegraciouslyrevealed.com/2135897/episodes/13029865-17-rising-above-from-nfl-triumphs-to-empowering-the-world-with-jackson-crisp (last visited August 5, 2026).) Mr. Crisp conveyed his rights in the Patents-in-Suit to Plaintiff as set forth below, and Plaintiff brings this action to vindicate those rights.

## PARTIES

12.     Plaintiff Crispera J1 Assets LLC is a limited liability company organized and existing under the laws of the State of Texas, with its principal place of business at 5900 Balcones Drive, Suite 100, Austin, Texas 78731. Plaintiff is registered with the Texas Secretary of State under file number 32100377814. Plaintiff owns and manages the patent portfolio developed by sole inventor Jackson L. Crisp, including each of the Patents-in-Suit.

13.     On information and belief, Defendant Samsung Electronics America, Inc. ("SEA") is a corporation organized and existing under the laws of the State of New York, with its principal place of business at 85 Challenger Road, Ridgefield Park, New Jersey 07660, and a regular and established place of business in this District at 6625 Excellence Way, Plano, Texas 75023. Importantly, on June 1, 2026, *SEA announced that it is relocating its United States headquarters from New Jersey to its existing Plano, Texas campus*, with the transition reported to be completed as early as September or October 2026 and, in any event, by the end of 2026. On information and belief, SEA is a wholly owned subsidiary of Defendant Samsung Electronics Co., Ltd. Since at least June 10, 1996, SEA has been registered to do business in Texas under Texas Secretary of State file number 0011028006 and Texas Taxpayer Number 11329511536. SEA may be served with process through its registered agent for service in Texas, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

7

14.     On information and belief, Defendant Samsung Electronics Co., Ltd. ("SEC") is a corporation organized and existing under the laws of the Republic of Korea, with a principal place of business at 129 Samsung-ro, Yeongtong-gu, Suwon-si, Gyeonggi-do 16677, Republic of Korea.

15.     On information and belief, SEC owns one hundred percent (100%) of SEA. SEC and SEA are members of the same corporate family. On information and belief, SEC designs, develops, manufactures, and supplies accused Samsung products for importation into the United States, while SEA imports, distributes, markets, sells, and supports accused Samsung products and services in the United States, including in this District. Each claim in this Complaint is asserted against each Defendant based on that Defendant's own acts and on the acts attributable to that Defendant, and not on corporate affiliation alone. On information and belief, SEC does not maintain a registered agent for service of process in the United States, and Plaintiff will effect service on SEC in the Republic of Korea in accordance with Federal Rule of Civil Procedure 4(f) and the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters.

16.     On information and belief, Defendants, directly and/or through subsidiaries, affiliates, or intermediaries, develop, design, manufacture, use, test, distribute, market, offer to sell, sell, and/or import products and services in the United States, including in the Eastern District of Texas, and otherwise direct infringing activities to this District in connection with Samsung Galaxy Smartphones, Galaxy SmartTags, Samsung Smart TVs, Samsung Home Appliances, the SmartThings application and platform, Samsung Account services, Samsung Wallet, Samsung Digital Key, and Samsung Smart Switch, and all associated code-generation, code-scanning, registration, invitation, authentication, and account-linked response functionality that operates with any of the foregoing (the "Accused Products" or the "Accused Instrumentalities").

## JURISDICTION AND VENUE

17.     This civil action arises under the Patent Laws of the United States, 35 U.S.C. § 1 et seq. This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

18.     This Court has specific personal jurisdiction over each Defendant because each Defendant has committed acts within this District giving rise to this action and has established minimum contacts with this forum such that the exercise of jurisdiction over each Defendant would not offend traditional notions of fair play and substantial justice. Defendants, directly and through subsidiaries or intermediaries, have committed and continue to commit acts of infringement in this District by, among other things, making, using, testing, selling, offering for sale, and/or importing products and services that infringe the Patents-in-Suit, and by inducing others to infringe the Patents-in-Suit in this District. Defendants regularly conduct and solicit business in, engage in other persistent courses of conduct in, and derive substantial revenue from goods and services provided to residents of this District and the State of Texas.

19.     Each Defendant is also subject to this Court's jurisdiction pursuant to due process and the Texas long-arm statute, Tex. Civ. Prac. & Rem. Code § 17.041 *et seq*., due to its substantial business in this State and District, including at least its infringing activities alleged herein, its regular doing and soliciting of business in this District, and its persistent course of conduct in, and derivation of substantial revenue from, goods and services provided to residents of this District and the State of Texas. On information and belief, Defendants have hired and are hiring personnel in this District for positions that relate to the Accused Products, and witnesses from Defendants' facilities in this District will be required for deposition and/or trial in this action.

20.     On information and belief, Defendants, directly and/or through subsidiaries or intermediaries, have purposefully and voluntarily placed one or more infringing products and services into the stream of commerce with the intention and expectation that they will be purchased and used by consumers and enterprises in this District, and such infringing products and services have been and continue to be purchased and used in this District.

21.     Defendants are properly joined under 35 U.S.C. § 299 because, on information and belief, Defendants commonly and/or jointly make, use, sell, offer to sell, test, design, distribute, and/or import the Accused Products, such that at least one right to relief is asserted against Defendants jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences relating to the making, using, selling, offering for sale, and/or importing into the United States of the same Accused Products, and such that questions of fact common to all Defendants will arise in this action.

22.     Venue is proper in this District as to Defendant SEA pursuant to 28 U.S.C. § 1400(b) because SEA has committed acts of infringement in this District and has a regular and established place of business in this District, including at 6625 Excellence Way, Plano, Texas 75023. The venue inquiry as to SEA requires (1) a physical place in this District, (2) that is a regular and established place of business, and (3) that is the place of SEA. See *In re Cray Inc.*, 871 F.3d 1355, 1362-63 (Fed. Cir. 2017). Each requirement is satisfied, as set forth in the paragraphs that follow.

23.     Venue is proper in this District as to Defendant SEC pursuant to 28 U.S.C. § 1391(c)(3) because SEC is a defendant not resident in the United States and may therefore be sued in any judicial district, and the joinder of such a defendant is disregarded in determining where the

action may be brought with respect to the other Defendant. See *In re HTC Corp.*, 889 F.3d 1349, 1354 (Fed. Cir. 2018). SEC has also committed acts of infringement in this District.

24.     SEA maintains multiple places of business within this District. SEA maintains its flagship North Texas campus in this District at 6625 Excellence Way, Plano, Texas 75023, which it opened in 2019 in a newly redeveloped "216,000 square foot building" housing "more than 1,000 regional employees." (https://news.samsung.com/us/samsung-electronics-america-open-flagship-north-texas-campus/ (last visited August 5, 2026).) In June 2026, SEA announced that it is relocating its United States headquarters from Englewood Cliffs, New Jersey to that existing Plano, Texas campus, explaining that SEA "is undergoing a business transformation designed to better position our organization for long-term growth and future success," with approximately 1,000 headquarters employees affected and the transition to be completed by the end of 2026. (See https://www.nbcdfw.com/news/local/samsung-moving-u-s-headquarters-to-plano/4031494/ (last visited August 5, 2026); https://finance.yahoo.com/sectors/technology/articles/samsung-moves-u-headquarters-jersey-150213891.html (last visited August 5, 2026).) It has been reported that the relocation will be completed in September or October 2026 (https://en.sedaily.com/international/2026/07/21/samsung-moves-us-base-to-texas-citing-ai-strategy-after (last visited August 5, 2026)), while other reports state that the move will conclude by the end of 2026 (https://qz.com/samsung-us-headquarters-new-jersey-texas-plano-060326 (last visited August 5, 2026); https://dallasinnovates.com/samsung-is-relocating-its-u-s-hq-from-new-jersey-to-plano/ (last visited August 5, 2026)). That campus is a physical place in this District, is a regular and established place of business of SEA, and is a place from which SEA conducts substantial business operations, including operations concerning the development, marketing, sale, and support of the Accused Products, across multiple divisions including customer care, mobile,

mobile research and development, and engineering. On information and belief, since opening the Plano campus in 2019, Samsung has further expanded its Plano footprint multiple times, including with the addition of locations at 6625 Declaration Way, Plano, Texas 75023, and at 6105 Tennyson Parkway, Plano, Texas 75023. (See https://www.dallasnews.com/business/retail/2023/01/06/samsung-growing-in-north-texas-with-offices-in-plano-and-coppell-warehouse/ (reporting the Plano expansions).) Defendants publicly advertise employment opportunities with Samsung Electronics America on their careers website at https://www.samsung.com/us/careers/ (last visited August 5, 2026), and, on information and belief, as of that date Defendants' associated job portal listed open positions based in Plano, Texas. On information and belief, witnesses from SEA's Plano campus will be required for deposition and/or trial in this action. The Plano campus is a physical place in this District; it is a regular and established place of business, having operated continuously since 2019 and having been expanded on multiple occasions; and it is the place of SEA, which holds the campus out to the public as its own facility under the Samsung name, staffs it with its own full-time employees, including engineers and senior managers, and advertises open positions based there. On information and belief, SEA's business operations relating to the Accused Products, including its mobile devices, are conducted at that facility.

25. Samsung also maintains a "Samsung Experience Store" within this District, located at 2601 Preston Road, Frisco, Texas 75034, in Stonebriar Centre. (https://www.samsung.com/us/samsung-experience-store/locations/ (last visited August 6, 2026).) Samsung Experience Stores exist to provide an immersive in-person destination where customers can test the latest exclusive products hands-on, receive personalized care and repair support from certified experts, and participate in local workshops, events, and special promotions.

(https://www.samsung.com/us/store/stonebriar-centre (last visited August 6, 2026).) "The Samsung Experience Stores are designed to provide a welcoming space where members can explore the latest Galaxy devices, receive personalized support, and enjoy hands-on demonstrations. explore the latest Galaxy devices, get certified service and repairs, and enjoy expert guidance and exclusive in-store offers." (https://r1.community.samsung.com/t5/others/samsung-experience-store-at-cf-market-mall-in-calgary/td-p/37944417/ (last visited August 5, 2026).) The Accused Products are offered, sold, demonstrated, and supported at that facility.

26.    On information and belief, in other patent infringement matters in this District involving Samsung's mobile devices, Defendants have taken the position that venue is proper in this District and that this Court may exercise personal jurisdiction over both SEC and SEA. See *Ericsson Inc. v. Samsung Electronics Co., Ltd.*, No. 2:21-cv-00010-JRG (E.D. Tex.), Defendants' Answer and Counterclaims ¶¶ 7-8, Dkt. No. 7 (Feb. 4, 2021); *Clear Imaging Research, LLC v. Samsung Electronics Co., Ltd.*, No. 2:19-cv-00326 (E.D. Tex.), Samsung Defendants' Answer ¶¶ 7-8, Dkt. No. 23 (Jan. 22, 2020); *R2 Solutions LLC v. Samsung Electronics America, Inc.*, No. 4:21-cv-00089 (E.D. Tex.), Defendant Samsung Electronics America, Inc.'s Answer ¶¶ 5-8, Dkt. No. 14 (Apr. 19, 2021). The venue allegations in this Complaint also rest independently on the present facts alleged above concerning SEA's places of business in this District and Defendants' acts of infringement in this District.

27.    With respect to acts of infringement, Defendants make, use, test, sell, offer to sell, and/or import the Accused Products in this District; residents and businesses in this District purchase and use the Accused Products; and Defendants derive revenue from those activities in this District, including through Defendants' own website and online store, the Samsung Experience

Store, carrier channels, and other retail and authorized-reseller locations within this District, such as Verizon and T-Mobile stores.

28. Defendants have committed tortious acts within Texas and within this District, and the causes of action set forth in this Complaint arise from those acts. Defendants developed, manufactured, imported, distributed, and sold the Accused Products, which have been imported into, offered for sale in, sold in, purchased in, and used in Texas and within this District, including through Defendants' own online store and distribution network.

29. All allegations and supporting facts regarding jurisdiction set forth above are hereby incorporated by reference for purposes of venue.

## THE PATENTS-IN-SUIT

30. On November 2, 2021, United States Patent No. 11,164,054 (the "'054 Patent"), entitled "System linked item," was duly and legally issued by the USPTO to sole inventor Jackson L. Crisp. A true and correct copy of the '054 Patent is attached hereto as Exhibit A.

31. On April 18, 2023, United States Patent No. 11,630,976 (the "'976 Patent"), entitled "System linked item," was duly and legally issued by the USPTO to sole inventor Jackson L. Crisp. A true and correct copy of the '976 Patent is attached hereto as Exhibit B.

32. On October 10, 2023, United States Patent No. 11,783,147 (the "'147 Patent"), entitled "System linked item," was duly and legally issued by the USPTO to sole inventor Jackson L. Crisp. A true and correct copy of the '147 Patent is attached hereto as Exhibit C.

33. On September 17, 2024, United States Patent No. 12,093,760 (the "'760 Patent"), entitled "System linked item," was duly and legally issued by the USPTO to sole inventor Jackson L. Crisp. A true and correct copy of the '760 Patent is attached hereto as Exhibit D.

34.     On December 10, 2024, United States Patent No. 12,164,983 (the "'983 Patent"), entitled "System linked item," was duly and legally issued by the USPTO to sole inventor Jackson L. Crisp. A true and correct copy of the '983 Patent is attached hereto as Exhibit E.

35.     On August 19, 2025, United States Patent No. 12,393,809 (the "'809 Patent"), entitled "System linked item including readable code," was duly and legally issued by the USPTO to sole inventor Jackson L. Crisp. A true and correct copy of the '809 Patent is attached hereto as Exhibit F.

36.     Jackson L. Crisp conveyed to Plaintiff all right, title, and interest in and to the inventions of each of the Patents-in-Suit and their underlying patent applications, including the right to sue and to recover for past, present, and future infringement, by written assignment recorded with the USPTO. Plaintiff is the assignee of record and the owner of the entire right, title, and interest in and to each of the Patents-in-Suit, and Plaintiff held all substantial rights in each of the Patents-in-Suit, including the right to sue for and recover past damages, as of the filing of this Complaint.

37.     Each of the Patents-in-Suit is presumed valid under 35 U.S.C. § 282.

38.     Defendants are not licensed under any of the Patents-in-Suit, either expressly or impliedly, and Plaintiff has not otherwise authorized Defendants to make, use, test, offer for sale, sell, or import any product or service that embodies the inventions claimed in the Patents-in-Suit.

39.     The '054 Patent, the '976 Patent, the '147 Patent, the '760 Patent, the '983 Patent, and the '809 Patent are members of a single patent family descending from a single continuation chain rooted in United States Provisional Application No. 61/632,397, filed October 15, 2011, and United States Provisional Application No. 61/589,387, filed January 22, 2012, with the root non-

provisional application, United States Application Serial No. 13/652,446, filed October 15, 2012, and are collectively referred to herein as the "Patents-in-Suit" or the "Asserted Patents."

40.    Representative claim charts demonstrating how one or more of the Accused Products meets each limitation of at least one exemplary claim of each of the Patents-in-Suit are attached hereto as Exhibits G through L. Each such chart is incorporated by reference into the Count corresponding to its patent as though fully set forth therein.

## TECHNOLOGY BACKGROUND

41.    At the time of the inventions claimed in the Patents-in-Suit, machine-readable codes such as QR codes were conventionally used as inert data containers: a code encoded a fixed string, such as a web address, and any device that scanned the code received the same static payload. Conventional approaches provided no mechanism for connecting a particular physical item to computerized actions configured for that specific item and its user, no services account holding item-specific customized information, and no way for a scan to return information generated for the scanning user rather than the same fixed data embedded in the code itself. The specifications of the Patents-in-Suit, which share a common written description, identify these problems expressly. They explain that conventional information products carried fixed information and were "generally used once for a specific advertising purpose and then are typically discarded," or were "marked up . . . to update outdated information contained thereon, especially contact information." ('054 Patent at 2:5-9; '976 Patent at 2:8-12; '147 Patent at 2:11-15; '760 Patent at 2:14-18; '983 Patent at 2:15-19; '809 Patent at 2:18-22.) They further explain that connecting an ordinary item to useful computerized applications involved "many complicated steps," including obtaining a phone number or domain name, developing the phone or web application, and pointing the identifier to the newly set application, with the result that owners simply placed their own

contact information directly onto the item. ('054 Patent at 2:10-24; '976 Patent at 2:13-27; '147 Patent at 2:16-30; '760 Patent at 2:19-33; '983 Patent at 2:20-34; '809 Patent at 2:23-37.)

42.     Jackson L. Crisp confronted that problem beginning in 2011. Mr. Crisp filed United States Provisional Application No. 61/632,397 on October 15, 2011, and United States Provisional Application No. 61/589,387 on January 22, 2012, and the root non-provisional application on October 15, 2012, disclosing an architecture in which a scannable code affixed to or displayed on an item is linked, through a network, to a services account holding customized information about that specific item and its user; in which scanning the code transmits the code data together with device or account identity to a server; in which the server generates derived information that is expressly not the same as the stored customized information; and in which that derived output is returned to the scanning device or to an addressed recipient. The claims of the Patents-in-Suit recite that architecture in the form of production systems, consumer-side methods, provider-side methods, and system claims. The shared specification refers to the disclosed system linked item as a "for information product" or "FIP," and discloses, among other embodiments, "a process by which a picture can be taken of FIP configured and system-linked contact data by a FIP viewer, said picture being sent to system(s) for processing and with results related data being returned to said viewer." ('054 Patent at 3:58-62; '976 Patent at 3:58-62; '147 Patent at 3:64-4:2; '760 Patent at 3:65-4:2; '983 Patent at 3:66-4:3; '809 Patent at 4:4-8.)

43.     The inventions claimed in the Patents-in-Suit predate the mass adoption of QR-code-based commerce and device provisioning that followed. The claimed architecture is today the mechanism by which smartphones join smart-home platforms, home appliances are registered and personalized to a user's account, and consumers share contact, network, and access information through dynamically generated codes. Scannable-code flows of the kind claimed are now used

across the consumer electronics, smart home, retail, and payments industries, reflecting the migration from static one-dimensional barcodes to system-linked two-dimensional codes that followed the priority date of the Patents-in-Suit. Plaintiff does not contend that any claim of any Patent-in-Suit is essential to any technical standard or is subject to any commitment to license on fair, reasonable, and non-discriminatory terms.

44.    The inventions claimed in the Patents-in-Suit were not incremental refinements of existing tools, and they were not conventional, routine, or well-understood at the time of the inventions. Rather, the claimed inventions provided specific technical improvements to computerized item-linking and code-scanning technology, including a specific, concrete architecture in which a system-linked code is generated from and bound to a services account holding user-provided customized information, and in which a scan of that code activates server-side generation and return of derived information that is not the same as the stored customized information. These limitations require particular physical and computerized components arranged and configured in a particular way, improve the functioning of the underlying computer systems by replacing inert, static codes with system-linked codes bound to item-specific accounts and actions, and provide a concrete technical mechanism rather than an abstract idea, as reflected in the claims and the written descriptions of the Patents-in-Suit. The specifications tie these improvements directly to the disclosed architecture. Because the system linked contact information "is permanently configured onto the FIP, with settable system-applications associated/point to said contact information," the item can be "repeatedly used, advertising different information (including contact information) for different FIP related occasions/products by simply updating said settable system-applications." ('054 Patent at 3:30-40; '976 Patent at 3:31-40; '147 Patent at 3:37-46; '760 Patent at 3:38-47; '983 Patent at 3:39-48; '809 Patent at 3:44-53.) The account-linked

design also permits an item's owner "to advertise and receive FIP viewer related inquiries without having to reveal actual FIP owner contact information," because the owner "is given the option of whether or not they want to make their contact information public." ('054 Patent at 3:41-48; '976 Patent at 3:41-48; '147 Patent at 3:47-54; '760 Patent at 3:48-55; '983 Patent at 3:49-56; '809 Patent at 3:54-61.) These are functional capabilities that an inert, fixed-payload code cannot provide.

45.     A person of ordinary skill in the art reviewing the specifications of the Patents-in-Suit would understand that the inventor had possession of the claimed subject matter and would know how to practice the claimed inventions without undue experimentation. The written descriptions disclose system-linked contact information, services-account configurations, user-selected action settings, and computer-generated responses in sufficient detail to support and enable the asserted claims.

## THE ACCUSED INSTRUMENTALITIES

46.     Defendants make, use, test, sell, offer to sell, import, and/or distribute consumer electronics, smart-home, and mobile products and services that generate, display, carry, scan, and act upon machine-readable codes. As used herein, the terms "Accused Products" and "Accused Instrumentalities" refer to all products and services (including without limitation software, hardware, systems, network architectural designs, and related services) made, used, tested, sold, offered for sale, imported, or distributed by or on behalf of Defendants that practice one or more claims of the Patents-in-Suit, and all processes employed by Defendants that practice one or more claims of the Patents-in-Suit, where such products, services, and processes infringe in the same general way, including without limitation: (a) Samsung Galaxy Smartphones; (b) Samsung Smart TVs; (c) Samsung Home Appliances; (d) the SmartThings application and platform; (e) Samsung Account services; (f) Samsung Wallet; (g) Samsung Digital Key; (h) Galaxy SmartTags;

(i) Samsung Smart Switch; (j) Samsung mobile hotspot and tethering functionality; and (k) all associated code-generation, code-scanning, registration, invitation, authentication, and account-linked response functionality that operates with any of the foregoing. The Accused Products specific to each Patent-in-Suit are identified in the Count for that patent and in the corresponding claim chart, and Plaintiff reserves the right to identify additional Accused Products through its Disclosure of Asserted Claims and Infringement Contentions at the time required by the Court's Docket Control Order and the Rules of Practice for Patent Cases before the Eastern District of Texas (P.R. 3-1). On information and belief, the foregoing product categories share a common architecture in which Defendants' code-generation and code-scanning functionality operates with the Samsung Account and SmartThings services to generate, scan, and act upon system-linked codes.

47.    On information and belief, the Accused Products implement the claimed architecture through Samsung's code-scanning and code-generation features operating with the Samsung Account and SmartThings services. Samsung instructs users to scan codes with the Galaxy smartphone Camera app: "Navigate to and open the Camera app, and make sure PHOTO is selected at the bottom. Then, position the viewfinder to scan the code." (https://www.samsung.com/us/support/answer/ANS10001925/ (last visited August 5, 2026).) Samsung instructs users to generate on-screen codes encoding their contact information: "You can also share a contact with another device using a QR code. Tap a contact, then tap More (the three vertical dots) at the bottom, and then tap QR code." (https://www.samsung.com/us/support/answer/ANS10001943/ (last visited August 5, 2026).) Samsung instructs users to generate on-screen codes encoding network credentials: "Instead of typing the password, you can generate a QR code that others can scan to connect instantly."

(https://www.samsung.com/ae/support/mobile-devices/how-to-share-your-wi-fi-password-without-typing-it/ (last visited August 5, 2026).) Samsung instructs users to register home appliances to their accounts by scanning the code carried on the appliance: "Tap QR Code Scan and recognize the QR code of the home appliance to be connected." (https://www.samsung.com/latin_en/support/apps-services/how-to-register-home-appliances-in-the-smartthings-app/ (last visited August 5, 2026).) Samsung further documents code-based Samsung Account authentication on its Smart TVs (https://www.samsung.com/levant/support/tv-audio-video/setting-up-your-samsung-tv-using-your-samsung-account/ (last visited August 5, 2026)), code-based device onboarding through SmartThings (https://www.samsung.com/us/support/connect-with-smartthings/ (last visited August 5, 2026)), code-based mobile hotspot sharing (https://www.samsung.com/au/support/mobile-devices/use-qr-code-for-mobile-hotspot/ (last visited August 5, 2026)), and code-based account authentication and device setup through Smart Switch (https://www.samsung.com/us/support/answer/ANS10002401/ (last visited August 5, 2026)). Samsung also instructs users to invite members to a SmartThings location through a QR code; when the invitee scans the code, the SmartThings app opens so the invitee can review instructions and join the location. (https://www.samsung.com/us/support/answer/ANS10002634/ (last visited August 5, 2026).)

48.     On information and belief, the same scannable-code architecture extends across Defendants' broader product and service ecosystem, including Samsung Wallet, which Samsung describes as "a secure and unified digital wallet solution designed for Samsung Galaxy devices" that supports items such as tickets, boarding passes, and coupons (https://developer.samsung.com/wallet/welcome/introduction.html (last visited August 5, 2026)),

and which generates, stores, and presents scannable codes linked to a user's Samsung Account; Samsung Digital Key; and Galaxy SmartTags, which are physical items registered to a user's account through Defendants' applications and services. Defendants' current flagship devices, including the Galaxy S26 Ultra (https://www.samsung.com/us/smartphones/galaxy-s26-ultra/ (last visited August 5, 2026)), ship with these code-scanning and code-generation capabilities enabled.

49.    On information and belief, Defendants actively market, sell, distribute, and support the Accused Products throughout the United States, including in this District, through their website, direct and enterprise sales, carrier channels, retail stores, and authorized resellers, and derive substantial revenue from customers in this District who purchase and use the Accused Products.

50.    Defendants' own published documentation describes the accused functionality in terms that track the claimed architecture. Samsung instructs purchasers of its products to "Scan the QR code on your products for easy registration," and states that "[t]his feature is only supported on Samsung Home Appliances and non-smart B2C monitors." (https://www.samsung.com/sg/support/how-to-find-the-serial-number-of-your-samsung-product/ (last visited August 5, 2026).) Samsung further instructs users to "Tap QR Code Scan and recognize the QR code of the home appliance to be connected." (https://www.samsung.com/latin_en/support/apps-services/how-to-register-home-appliances-in-the-smartthings-app/ (last visited August 5, 2026).) On information and belief, the printed code carried on the appliance label registers that appliance to the user's SmartThings and Samsung Account and provides access to the electronic materials maintained for that appliance, and Defendants deploy that code-based registration across thousands of appliance models.

22

51.    On information and belief, Defendants also generate codes from settings held in a user's account rather than encoding a fixed payload. Samsung states that, with its SmartThings Together feature, "a quick QR Code scan grants temporary access and control over designated devices and routines"; that "the QR codes are only available for five minutes before they regenerate"; and that "[e]ach QR code is available to one person only." (https://news.samsung.com/us/smartthings-together-ces-2024/ (last visited August 5, 2026).) Samsung also states that a recipient who scans a SmartThings invitation code is taken to the SmartThings application to review instructions and join the owner's location. (https://www.samsung.com/us/support/answer/ANS10002634/ (last visited August 5, 2026).) On information and belief, the access granted and the computerized response returned to the scanning user are determined by the settings held in the owner's SmartThings location and Samsung Account, so that the information returned upon a scan is generated by the server from those settings and is not the same as the information stored in the account.

### DEFENDANTS' KNOWLEDGE OF THE PATENTS-IN-SUIT

52.    For purposes of this Complaint, each Defendant's "Knowledge Date" is at least as early as the date of the filing and service of this Complaint. The basis for the alleged knowledge is this Complaint itself, together with the claim charts attached as Exhibits G through L, which identify for each Patent-in-Suit the asserted claim, the accused functionality, and the manner in which that functionality is alleged to meet each limitation of the asserted claim. Plaintiff will seek discovery regarding earlier knowledge and reserves its right to amend the Knowledge Date accordingly after Plaintiff has received fulsome discovery. For now, the allegations of induced infringement, contributory infringement, and willful infringement set forth below are directed solely to each Defendant's conduct on and after that Knowledge Date and are not premised on any

pre-Complaint conduct. Plaintiff alleges that each Defendant continued the conduct attributed to it after its applicable Knowledge Date.

53.    On information and belief, Defendants are sophisticated participants in the consumer electronics, smart home, and mobile device industries that develop, implement, and standardize code-based device provisioning, registration, and authentication technologies, and that monitor patent activity in those fields, including patents relevant to the code-scanning and account-linked response technologies claimed in the Patents-in-Suit.

54.    In the alternative, and to the extent any Defendant contends that it lacked actual knowledge of a Patent-in-Suit, that Defendant has been willfully blind to the Patents-in-Suit and to its infringement. On information and belief, each Defendant subjectively believes that there is a high probability that its making, using, testing, selling, offering for sale, and importing of the Accused Products constitutes infringement of one or more claims of the Patents-in-Suit, and each Defendant has taken deliberate actions to avoid learning of that fact.

55.    The allegations of induced infringement, contributory infringement, and willful infringement set forth below are directed to each Defendant's conduct on and after its applicable Knowledge Date, and are not premised solely on conduct before that date. This Complaint and the claim charts incorporated into the Counts below identify the Patents-in-Suit, the asserted claims, the accused functionality, and the manner in which that functionality is alleged to meet each limitation of the asserted claims. Plaintiff's investigation is ongoing, and Plaintiff reserves the right to seek leave under Federal Rule of Civil Procedure 15 to allege an earlier knowledge date, and correspondingly earlier indirect or willful infringement, if discovery supplies a good-faith factual basis for doing so.

## <u>COUNT I</u>

**(INFRINGEMENT OF U.S. PATENT NO. 11,164,054)**

56.    Plaintiff restates and realleges each of the preceding paragraphs of this Complaint, which are incorporated by reference as if fully set forth herein.

57.    Defendants, under 35 U.S.C. § 271(a), have directly infringed and continue to directly infringe, literally and/or under the doctrine of equivalents, one or more claims of the '054 Patent, including without limitation at least exemplary claim 1, by making, using, testing, selling, offering for sale, and/or importing into the United States the "'054 Accused Products," which include Samsung Galaxy Smartphones that generate and display on the device screen a machine-readable code encoding the user's contact information or network credentials, and all other Accused Products that infringe in the same general way, without authority or license from Plaintiff. The '054 Accused Products include such products and services made, used, tested, sold, offered for sale, and/or imported from at least the November 2, 2021 issuance of the '054 Patent to the present.

58.    Exemplary claim 1 of the '054 Patent recites: "A method comprising: acquiring a system linked item comprising a physical item and system linked contact information, the system linked contact information being physically displayed on the physical item; setting personalized action settings comprising personalized information in a computer system, setting the personalized action settings comprising inputting the personalized information into the computer system as user input, the personalized action settings being linked to the system linked contact information in the computer system; and configuring the computer system to perform a response to user input of each of one or more action requests into the computer system, the one or more action requests representing the system linked contact information, the response to user input of each of one or more action requests comprising one or more computerized actions defined by the personalized

action settings, and the one or more computerized actions comprising retrieving the personalized information and transmitting the personalized information in the response to user input of each of one or more action requests."

59.    The '054 Accused Products perform the method claimed in the '054 Patent. Each Galaxy Smartphone is a physical item that is acquired as a system linked item together with system linked contact information physically displayed on the item, in that the device generates and displays on its own screen a machine-readable code that encodes the user's contact information or system network credentials.

60.    In ordinary operation, personalized action settings comprising personalized information are set in a computer system through user input and linked to the system linked contact information, and the computer system is configured so that, in response to user input of an action request representing the system linked contact information, it performs one or more computerized actions defined by the personalized action settings, including retrieving the personalized information and transmitting the personalized information.

61.    To the extent any step of any asserted method claim of the '054 Patent is performed by Defendants' customers or end users, Defendants direct and control that performance: Defendants condition participation in an activity or receipt of a benefit, including device activation, account registration, network connection, and access to Defendants' applications and services, upon performance of the step, and establish the manner or timing of that performance through the design and configuration of the '054 Accused Products and through Defendants' account registration and service requirements, such that the performance of all claimed steps is attributable to Defendants. Plaintiff does not rely on Defendants' provision of instructions, or on Defendants' facilitation of use, standing alone, as the basis for attribution.

62.    Defendants have also indirectly infringed and continue to indirectly infringe the '054 Patent by actively inducing direct infringement by third parties under 35 U.S.C. § 271(b). With knowledge of the '054 Patent since at least the Knowledge Date, Defendants have knowingly, intentionally, and actively aided, abetted, and induced others, including their customers and end users in this District and throughout the United States, to directly infringe at least one claim of the '054 Patent, with the specific intent that those third parties infringe. Defendants knew, or should have known, that the acts they induced constitute infringement of the '054 Patent. Defendants' customers and end users directly infringe the '054 Patent by using the '054 Accused Products in their intended and ordinary manner, as directed and instructed by Defendants, and those customers and end users are direct infringers.

63.    Defendants provide information, instructions, and technical support to their customers and end users, including product manuals, user guides, support articles, tutorials, in-product guidance, brochures, videos, demonstrations, training, and website materials, that encourage their customers and end users to purchase the '054 Accused Products and instruct them to use the '054 Accused Products in a manner that directly infringes the '054 Patent, including the published documentation cited above. This claim for induced infringement is directed to Defendants' conduct on and after the Knowledge Date.

64.    On information and belief, Defendants' infringement of the '054 Patent has been, and continues to be, willful. Defendants knew of the '054 Patent as of the Knowledge Date; after acquiring that knowledge, Defendants continued to make, use, test, sell, offer for sale, and/or import the '054 Accused Products; and in doing so Defendants knew, or should have known, that their conduct amounted to infringement of the '054 Patent. On information and belief, Defendants' continued conduct after the Knowledge Date was subjectively willful, in that Defendants

27

proceeded with knowledge of a high risk of infringement and deliberately or recklessly disregarded that risk, including because this Complaint and the claim chart incorporated into this Count identify the asserted claim, the accused functionality, and the manner in which that functionality meets each limitation of the asserted claim. Defendants' willful infringement supports an award of enhanced damages up to three times the amount found or assessed, pursuant to 35 U.S.C. § 284.

65.    Plaintiff has been damaged, and continues to be damaged, by Defendants' infringement of the '054 Patent, and is entitled to recover from Defendants damages adequate to compensate for that infringement, in no event less than a reasonable royalty for the use made of the inventions by Defendants, together with interest and costs as fixed by the Court, pursuant to 35 U.S.C. § 284.

66.    Defendants' infringement of the '054 Patent has caused and, unless enjoined by this Court pursuant to 35 U.S.C. § 283, will continue to cause Plaintiff irreparable injury and damage for which Plaintiff has no adequate remedy at law.

67.    The representative claim chart attached hereto as Exhibit G describes how the elements of exemplary claim 1 of the '054 Patent are infringed by a representative Accused Product. Exhibit G is incorporated herein by reference. The chart is illustrative rather than exhaustive, and it is representative of the '054 Accused Products, which implement the accused functionality in the same manner. The chart provides details regarding only one example of Defendants' infringement, and only as to a single patent claim, and Plaintiff reserves the right to provide greater detail and scope through its Disclosure of Asserted Claims and Infringement Contentions at the time required by the Court's Docket Control Order and the Rules of Practice for Patent Cases before the Eastern District of Texas (P.R. 3-1).

68. On information and belief, Defendants derive substantial revenue, directly and indirectly, from making, using, testing, selling, offering for sale, and importing the '054 Accused Products in this District and elsewhere in the United States.

## COUNT II

### (INFRINGEMENT OF U.S. PATENT NO. 11,630,976)

69. Plaintiff restates and realleges each of the preceding paragraphs of this Complaint, which are incorporated by reference as if fully set forth herein.

70. Defendants, under 35 U.S.C. § 271(a), have directly infringed and continue to directly infringe, literally and/or under the doctrine of equivalents, one or more claims of the '976 Patent, including without limitation at least exemplary claim 13, by making, using, testing, selling, offering for sale, and/or importing into the United States the "'976 Accused Products," which include Samsung Galaxy Smartphones operating with the Samsung Account and SmartThings services, and all other Accused Products that infringe in the same general way, without authority or license from Plaintiff. The '976 Accused Products include such products and services made, used, tested, sold, offered for sale, and/or imported from at least the April 18, 2023 issuance of the '976 Patent to the present.

71. Exemplary claim 13 of the '976 Patent recites: "A linked item system comprising: a system linked item comprising a physical item displaying system linked contact information; and a computer system configured to perform the following acts: verifying a user access request in the computer system, the verifying comprising verifying that data from the user access request is linked to the system linked contact information in the computer system; in response to the verifying, permitting a user input request to set personalized action settings in the computer system, the personalized action settings comprising personalized information; receiving the user

input request to set personalized action settings in the computer system, the personalized action settings being linked to the system linked contact information in the computer system, and the user input request comprising the personalized information; setting the personalized action settings in the computer system in response to receiving the request to set the personalized action settings in the computer system; receiving user input representing the system linked contact information in the computer system; and in response to receiving the system linked contact information in the computer system, performing one or more personalized computerized actions defined by the personalized action settings, the one or more personalized computerized actions comprising retrieving the personalized information and transmitting the personalized information in response to receiving the system linked contact information in the computer system."

72.    The '976 Accused Products embody the linked item system claimed in the '976 Patent, comprising a system linked item that comprises a physical item displaying system linked contact information and a computer system configured to perform the recited acts. Each Galaxy Smartphone is a physical item that displays on its own screen a machine-readable code encoding the user's contact information or system network credentials, and operates with a computer system comprising the Samsung Account and SmartThings services.

73.    In ordinary operation, the computer system verifies a user access request by verifying that data from the request is linked to the system linked contact information, and, in response to the verifying, permits and receives a user input request to set personalized action settings comprising personalized information linked to the system linked contact information, sets those settings, receives user input representing the system linked contact information, and, in response, performs one or more personalized computerized actions defined by the personalized

action settings, comprising retrieving the personalized information and transmitting the personalized information.

74. Defendants use the system claimed in the '976 Patent within the meaning of 35 U.S.C. § 271(a) by putting that system into service, that is, by controlling the system as a whole and obtaining benefit from it. Defendants design and supply the '976 Accused Products, operate the Samsung Account and SmartThings services that verify user access requests, hold the personalized action settings, and perform the personalized computerized actions, and obtain the benefit of account enrollment, device registration, and continuing service relationships each time the system operates. Defendants also make and test the claimed system within the United States.

75. Defendants have also indirectly infringed and continue to indirectly infringe the '976 Patent by actively inducing direct infringement by third parties under 35 U.S.C. § 271(b). With knowledge of the '976 Patent since at least the Knowledge Date, Defendants have knowingly, intentionally, and actively aided, abetted, and induced others, including their customers and end users in this District and throughout the United States, to directly infringe at least one claim of the '976 Patent, with the specific intent that those third parties infringe. Defendants knew, or should have known, that the acts they induced constitute infringement of the '976 Patent. Defendants' customers and end users directly infringe the '976 Patent by using the '976 Accused Products in their intended and ordinary manner, as directed and instructed by Defendants, and those customers and end users are direct infringers.

76. Defendants provide information, instructions, and technical support to their customers and end users, including product manuals, user guides, support articles, tutorials, in-product guidance, brochures, videos, demonstrations, training, and website materials, that encourage their customers and end users to purchase the '976 Accused Products and instruct them

31

to use the '976 Accused Products in a manner that directly infringes the '976 Patent, including the published documentation cited above. This claim for induced infringement is directed to Defendants' conduct on and after the Knowledge Date.

77. Defendants have also contributorily infringed and continue to contributorily infringe the '976 Patent under 35 U.S.C. § 271(c). With knowledge of the '976 Patent since at least the Knowledge Date, Defendants have offered to sell, sold, and/or imported within the United States a component of the patented invention, namely the SmartThings application and platform software and the Samsung Account service software, including the device-registration, code-generation, code-scanning, invitation, and account-linked response modules supplied by Defendants for installation and use on the '976 Accused Products, comprising the on-device function that generates a scannable code from information held in the user's Samsung Account. That component constitutes a material part of the invention claimed in the '976 Patent, because it is the component that binds the code to the account-held settings, generates invitation and registration codes, and returns the responsive information upon a scan. Defendants know that component to be especially made and especially adapted for use in an infringement of the '976 Patent. On information and belief, that component is not a staple article or commodity of commerce suitable for substantial non-infringing use, because it operates only with Defendants' own devices and account services and has no function apart from generating, scanning, and acting upon system-linked codes in the manner set forth in Exhibit H, and any non-infringing use of that component is at most occasional, impractical, or experimental rather than substantial. This claim for contributory infringement is directed to Defendants' conduct on and after the Knowledge Date.

78. On information and belief, Defendants' infringement of the '976 Patent has been, and continues to be, willful. Defendants knew of the '976 Patent as of the Knowledge Date; after

acquiring that knowledge, Defendants continued to make, use, test, sell, offer for sale, and/or import the '976 Accused Products; and in doing so Defendants knew, or should have known, that their conduct amounted to infringement of the '976 Patent. On information and belief, Defendants' continued conduct after the Knowledge Date was subjectively willful, in that Defendants proceeded with knowledge of a high risk of infringement and deliberately or recklessly disregarded that risk, including because this Complaint and the claim chart incorporated into this Count identify the asserted claim, the accused functionality, and the manner in which that functionality meets each limitation of the asserted claim. Defendants' willful infringement supports an award of enhanced damages up to three times the amount found or assessed, pursuant to 35 U.S.C. § 284.

79.     Plaintiff has been damaged, and continues to be damaged, by Defendants' infringement of the '976 Patent, and is entitled to recover from Defendants damages adequate to compensate for that infringement, in no event less than a reasonable royalty for the use made of the inventions by Defendants, together with interest and costs as fixed by the Court, pursuant to 35 U.S.C. § 284.

80.     Defendants' infringement of the '976 Patent has caused and, unless enjoined by this Court pursuant to 35 U.S.C. § 283, will continue to cause Plaintiff irreparable injury and damage for which Plaintiff has no adequate remedy at law.

81.     The representative claim chart attached hereto as Exhibit H describes how the elements of exemplary claim 13 of the '976 Patent are infringed by a representative Accused Product. Exhibit H is incorporated herein by reference. The chart is illustrative rather than exhaustive, and it is representative of the '976 Accused Products, which implement the accused functionality in the same manner. The chart provides details regarding only one example of Defendants' infringement, and only as to a single patent claim, and Plaintiff reserves the right to

33

provide greater detail and scope through its Disclosure of Asserted Claims and Infringement Contentions at the time required by the Court's Docket Control Order and the Rules of Practice for Patent Cases before the Eastern District of Texas (P.R. 3-1).

82. On information and belief, Defendants derive substantial revenue, directly and indirectly, from making, using, testing, selling, offering for sale, and importing the '976 Accused Products in this District and elsewhere in the United States.

**COUNT III**

**(INFRINGEMENT OF U.S. PATENT NO. 11,783,147)**

83. Plaintiff restates and realleges each of the preceding paragraphs of this Complaint, which are incorporated by reference as if fully set forth herein.

84. Defendants, under 35 U.S.C. § 271(a), have directly infringed and continue to directly infringe, literally and/or under the doctrine of equivalents, one or more claims of the '147 Patent, including without limitation at least exemplary claim 23, by making, using, testing, selling, offering for sale, and/or importing into the United States the "'147 Accused Products," which include Samsung Galaxy Smartphones and Samsung Home Appliances that carry or display a scannable code registered to a Samsung Account, and all other Accused Products that infringe in the same general way, without authority or license from Plaintiff. The '147 Accused Products include such products and services made, used, tested, sold, offered for sale, and/or imported from at least the October 10, 2023 issuance of the '147 Patent to the present.

85. Exemplary claim 23 of the '147 Patent recites: "A method comprising: providing a system linked item comprising a physical item, the physical item comprising system linked contact information, the system linked contact information comprising a scannable code; performing the following acts via a computer system: receiving a user input request to set customized action

settings in the computer system, the customized action settings being linked to the system linked contact information in the computer system, and the user input request comprising customized information; setting the customized action settings in the computer system in response to receiving the user input request to set the customized action settings in the computer system, the setting of the customized action settings comprising associating the customized action settings with a services-account in the computer system, the customized action settings comprising the customized information; receiving user input representing the system linked contact information in the computer system, the receiving of the user input representing the system linked contact information in the computer system comprising scanning the scannable code; and in response to receiving the system linked contact information in the computer system, performing one or more customized computerized actions defined by the customized action settings, the one or more customized computerized actions comprising retrieving and transmitting derived information in response to receiving the system linked contact information in the computer system, the derived information being derived from the customized information."

86.     The '147 Accused Products perform the method claimed in the '147 Patent. Each Galaxy Smartphone provides a system linked item comprising a physical item, the physical item comprising system linked contact information comprising a scannable code, in that the device provides on its own screen a scannable code encoding the user's contact information or system network credentials.

87.     In ordinary operation, a computer system receives a user input request to set customized action settings linked to the system linked contact information and comprising customized information, sets those settings by associating them with a services-account, receives user input representing the system linked contact information by scanning the scannable code, and,

in response, performs one or more customized computerized actions defined by the customized action settings, comprising retrieving and transmitting derived information that is derived from the customized information.

88.     To the extent any step of any asserted method claim of the '147 Patent is performed by Defendants' customers or end users, Defendants direct and control that performance: Defendants condition participation in an activity or receipt of a benefit, including device activation, account registration, network connection, and access to Defendants' applications and services, upon performance of the step, and establish the manner or timing of that performance through the design and configuration of the '147 Accused Products and through Defendants' account registration and service requirements, such that the performance of all claimed steps is attributable to Defendants. Plaintiff does not rely on Defendants' provision of instructions, or on Defendants' facilitation of use, standing alone, as the basis for attribution.

89.     Defendants have also indirectly infringed and continue to indirectly infringe the '147 Patent by actively inducing direct infringement by third parties under 35 U.S.C. § 271(b). With knowledge of the '147 Patent since at least the Knowledge Date, Defendants have knowingly, intentionally, and actively aided, abetted, and induced others, including their customers and end users in this District and throughout the United States, to directly infringe at least one claim of the '147 Patent, with the specific intent that those third parties infringe. Defendants knew, or should have known, that the acts they induced constitute infringement of the '147 Patent. Defendants' customers and end users directly infringe the '147 Patent by using the '147 Accused Products in their intended and ordinary manner, as directed and instructed by Defendants, and those customers and end users are direct infringers.

90.    Defendants provide information, instructions, and technical support to their customers and end users, including product manuals, user guides, support articles, tutorials, in-product guidance, brochures, videos, demonstrations, training, and website materials, that encourage their customers and end users to purchase the '147 Accused Products and instruct them to use the '147 Accused Products in a manner that directly infringes the '147 Patent, including the published documentation cited above. This claim for induced infringement is directed to Defendants' conduct on and after the Knowledge Date.

91.    On information and belief, Defendants' infringement of the '147 Patent has been, and continues to be, willful. Defendants knew of the '147 Patent as of the Knowledge Date; after acquiring that knowledge, Defendants continued to make, use, test, sell, offer for sale, and/or import the '147 Accused Products; and in doing so Defendants knew, or should have known, that their conduct amounted to infringement of the '147 Patent. On information and belief, Defendants' continued conduct after the Knowledge Date was subjectively willful, in that Defendants proceeded with knowledge of a high risk of infringement and deliberately or recklessly disregarded that risk, including because this Complaint and the claim chart incorporated into this Count identify the asserted claim, the accused functionality, and the manner in which that functionality meets each limitation of the asserted claim. Defendants' willful infringement supports an award of enhanced damages up to three times the amount found or assessed, pursuant to 35 U.S.C. § 284.

92.    Plaintiff has been damaged, and continues to be damaged, by Defendants' infringement of the '147 Patent, and is entitled to recover from Defendants damages adequate to compensate for that infringement, in no event less than a reasonable royalty for the use made of the inventions by Defendants, together with interest and costs as fixed by the Court, pursuant to 35 U.S.C. § 284.

93.     Defendants' infringement of the '147 Patent has caused and, unless enjoined by this Court pursuant to 35 U.S.C. § 283, will continue to cause Plaintiff irreparable injury and damage for which Plaintiff has no adequate remedy at law.

94.     The representative claim chart attached hereto as Exhibit I describes how the elements of exemplary claim 23 of the '147 Patent are infringed by a representative Accused Product. Exhibit I is incorporated herein by reference. The chart is illustrative rather than exhaustive, and it is representative of the '147 Accused Products, which implement the accused functionality in the same manner. The chart provides details regarding only one example of Defendants' infringement, and only as to a single patent claim, and Plaintiff reserves the right to provide greater detail and scope through its Disclosure of Asserted Claims and Infringement Contentions at the time required by the Court's Docket Control Order and the Rules of Practice for Patent Cases before the Eastern District of Texas (P.R. 3-1).

95.     On information and belief, Defendants derive substantial revenue, directly and indirectly, from making, using, testing, selling, offering for sale, and importing the '147 Accused Products in this District and elsewhere in the United States.

## COUNT IV

### (INFRINGEMENT OF U.S. PATENT NO. 12,093,760)

96.     Plaintiff restates and realleges each of the preceding paragraphs of this Complaint, which are incorporated by reference as if fully set forth herein.

97.     Defendants, under 35 U.S.C. § 271(a), have directly infringed and continue to directly infringe, literally and/or under the doctrine of equivalents, one or more claims of the '760 Patent, including without limitation at least exemplary claim 29, by making, using, testing, selling, offering for sale, and/or importing into the United States the "'760 Accused Products," which

include Samsung Galaxy Smartphones and Samsung Home Appliances that carry or display a scannable code registered to a Samsung Account, and all other Accused Products that infringe in the same general way, without authority or license from Plaintiff. The '760 Accused Products include such products and services made, used, tested, sold, offered for sale, and/or imported from at least the September 17, 2024 issuance of the '760 Patent to the present.

98.     Exemplary claim 29 of the '760 Patent recites: "A linked item system comprising: a system linked item comprising system linked contact information, the system linked contact information comprising a scannable code; and a computer system configured to perform the following acts: setting customized action settings comprising customized information in the computer system, setting the customized action settings comprising receiving the customized information into the computer system as user input, the customized action settings being linked to the system linked contact information in the computer system; and configuring the computer system to perform a response to user input of each of one or more action requests into the computer system, the user input of at least one of the one or more action requests comprising scanning the scannable code, the one or more action requests representing the system linked contact information, the response to user input of each of the one or more action requests comprising one or more computerized actions defined by the customized action settings, and the one or more computerized actions comprising retrieving and transmitting derived information in the response to user input of each of the one or more action requests, the derived information being derived from the customized information."

99.     The '760 Accused Products embody the linked item system claimed in the '760 Patent, comprising a system linked item that comprises system linked contact information comprising a scannable code, together with a computer system configured to perform the recited

acts. Each Galaxy Smartphone embodies the user's contact information or system network credentials in a scannable code and operates with a computer system that acts upon that code.

100. In ordinary operation, the computer system sets customized action settings comprising customized information received into the computer system as user input and linked to the system linked contact information, and is configured so that, in response to user input of an action request that comprises scanning the scannable code and that represents the system linked contact information, it performs one or more computerized actions defined by the customized action settings, comprising retrieving and transmitting derived information that is derived from the customized information.

101. Defendants use the system claimed in the '760 Patent within the meaning of 35 U.S.C. § 271(a) by putting that system into service, that is, by controlling the system as a whole and obtaining benefit from it. Defendants design and supply the '760 Accused Products, operate the Samsung Account and SmartThings services that hold the customized action settings and that generate and transmit the derived information returned when a scannable code is scanned, and obtain the benefit of account enrollment, device registration, and continuing service relationships each time the system operates. Defendants also make and test the claimed system within the United States.

102. Defendants have also indirectly infringed and continue to indirectly infringe the '760 Patent by actively inducing direct infringement by third parties under 35 U.S.C. § 271(b). With knowledge of the '760 Patent since at least the Knowledge Date, Defendants have knowingly, intentionally, and actively aided, abetted, and induced others, including their customers and end users in this District and throughout the United States, to directly infringe at least one claim of the '760 Patent, with the specific intent that those third parties infringe. Defendants knew, or should

have known, that the acts they induced constitute infringement of the '760 Patent. Defendants' customers and end users directly infringe the '760 Patent by using the '760 Accused Products in their intended and ordinary manner, as directed and instructed by Defendants, and those customers and end users are direct infringers.

103.    Defendants provide information, instructions, and technical support to their customers and end users, including product manuals, user guides, support articles, tutorials, in-product guidance, brochures, videos, demonstrations, training, and website materials, that encourage their customers and end users to purchase the '760 Accused Products and instruct them to use the '760 Accused Products in a manner that directly infringes the '760 Patent, including the published documentation cited above. This claim for induced infringement is directed to Defendants' conduct on and after the Knowledge Date.

104.    Defendants have also contributorily infringed and continue to contributorily infringe the '760 Patent under 35 U.S.C. § 271(c). With knowledge of the '760 Patent since at least the Knowledge Date, Defendants have offered to sell, sold, and/or imported within the United States a component of the patented invention, namely the SmartThings application and platform software and the Samsung Account service software, including the device-registration, code-generation, code-scanning, invitation, and account-linked response modules supplied by Defendants for installation and use on the '760 Accused Products, comprising the on-device function that generates a scannable code from information held in the user's Samsung Account. That component constitutes a material part of the invention claimed in the '760 Patent, because it is the component that binds the code to the account-held settings, generates invitation and registration codes, and returns the responsive information upon a scan. Defendants know that component to be especially made and especially adapted for use in an infringement of the '760

41

Patent. On information and belief, that component is not a staple article or commodity of commerce suitable for substantial non-infringing use, because it operates only with Defendants' own devices and account services and has no function apart from generating, scanning, and acting upon system-linked codes in the manner set forth in Exhibit J, and any non-infringing use of that component is at most occasional, impractical, or experimental rather than substantial. This claim for contributory infringement is directed to Defendants' conduct on and after the Knowledge Date.

105.    On information and belief, Defendants' infringement of the '760 Patent has been, and continues to be, willful. Defendants knew of the '760 Patent as of the Knowledge Date; after acquiring that knowledge, Defendants continued to make, use, test, sell, offer for sale, and/or import the '760 Accused Products; and in doing so Defendants knew, or should have known, that their conduct amounted to infringement of the '760 Patent. On information and belief, Defendants' continued conduct after the Knowledge Date was subjectively willful, in that Defendants proceeded with knowledge of a high risk of infringement and deliberately or recklessly disregarded that risk, including because this Complaint and the claim chart incorporated into this Count identify the asserted claim, the accused functionality, and the manner in which that functionality meets each limitation of the asserted claim. Defendants' willful infringement supports an award of enhanced damages up to three times the amount found or assessed, pursuant to 35 U.S.C. § 284.

106.    Plaintiff has been damaged, and continues to be damaged, by Defendants' infringement of the '760 Patent, and is entitled to recover from Defendants damages adequate to compensate for that infringement, in no event less than a reasonable royalty for the use made of the inventions by Defendants, together with interest and costs as fixed by the Court, pursuant to 35 U.S.C. § 284.

107.    Defendants' infringement of the '760 Patent has caused and, unless enjoined by this Court pursuant to 35 U.S.C. § 283, will continue to cause Plaintiff irreparable injury and damage for which Plaintiff has no adequate remedy at law.

108.    The representative claim chart attached hereto as Exhibit J describes how the elements of exemplary claim 29 of the '760 Patent are infringed by a representative Accused Product. Exhibit J is incorporated herein by reference. The chart is illustrative rather than exhaustive, and it is representative of the '760 Accused Products, which implement the accused functionality in the same manner. The chart provides details regarding only one example of Defendants' infringement, and only as to a single patent claim, and Plaintiff reserves the right to provide greater detail and scope through its Disclosure of Asserted Claims and Infringement Contentions at the time required by the Court's Docket Control Order and the Rules of Practice for Patent Cases before the Eastern District of Texas (P.R. 3-1).

109.    On information and belief, Defendants derive substantial revenue, directly and indirectly, from making, using, testing, selling, offering for sale, and importing the '760 Accused Products in this District and elsewhere in the United States.

## COUNT V

### (INFRINGEMENT OF U.S. PATENT NO. 12,164,983)

110.    Plaintiff restates and realleges each of the preceding paragraphs of this Complaint, which are incorporated by reference as if fully set forth herein.

111.    Defendants, under 35 U.S.C. § 271(a), have directly infringed and continue to directly infringe, literally and/or under the doctrine of equivalents, one or more claims of the '983 Patent, including without limitation at least exemplary claim 1, by making, using, testing, selling, offering for sale, and/or importing into the United States the "'983 Accused Products," which

43

include Samsung Galaxy Smartphones that generate and act upon a system-linked readable code, and all other Accused Products that infringe in the same general way, without authority or license from Plaintiff. The '983 Accused Products include such products and services made, used, tested, sold, offered for sale, and/or imported from at least the December 10, 2024 issuance of the '983 Patent to the present.

112.    Exemplary claim 1 of the '983 Patent recites: "A system comprising: an item including a system-linked readable code, wherein the system-linked readable code comprises a customized action setting, the customized action setting being associated with activation of a preset computerized response, the preset computerized response being configured to activate responsive to a computerized device receiving digital input comprising scanned data, the scanned data including the system-linked readable code; and a computer system configured to: receive a customized information, the customized information including user provided information; generate the customized action setting responsive to receiving the customized information; generate the system-linked readable code responsive to generating the customized action setting; wherein the preset computerized response activated by the customized action setting comprises one or more computerized actions, the one or more computerized actions comprising the generating of information derived from the customized information, wherein the information derived from the customized information is not the same as the customized information."

113.    The '983 Accused Products embody the system claimed in the '983 Patent, comprising an item including a system-linked readable code, wherein the system-linked readable code comprises a customized action setting associated with activation of a preset computerized response that is configured to activate responsive to a computerized device receiving digital input comprising scanned data that includes the system-linked readable code. Each Galaxy Smartphone

generates such a system-linked readable code and is configured to receive and act upon that code when it is scanned.

114. In ordinary operation, a computer system is configured to receive a customized information including user provided information, to generate the customized action setting responsive to receiving the customized information, and to generate the system-linked readable code responsive to generating the customized action setting, wherein the preset computerized response activated by the customized action setting comprises one or more computerized actions comprising the generating of information derived from the customized information that is not the same as the customized information.

115. Defendants use the system claimed in the '983 Patent within the meaning of 35 U.S.C. § 271(a) by putting that system into service, that is, by controlling the system as a whole and obtaining benefit from it. Defendants design and supply the '983 Accused Products, operate the Samsung Account and SmartThings services that receive the customized information, generate the customized action setting and the system-linked readable code, and activate the preset computerized response, and obtain the benefit of account enrollment, device registration, and continuing service relationships each time the system operates. Defendants also make and test the claimed system within the United States.

116. Defendants have also indirectly infringed and continue to indirectly infringe the '983 Patent by actively inducing direct infringement by third parties under 35 U.S.C. § 271(b). With knowledge of the '983 Patent since at least the Knowledge Date, Defendants have knowingly, intentionally, and actively aided, abetted, and induced others, including their customers and end users in this District and throughout the United States, to directly infringe at least one claim of the '983 Patent, with the specific intent that those third parties infringe. Defendants knew, or should

have known, that the acts they induced constitute infringement of the '983 Patent. Defendants' customers and end users directly infringe the '983 Patent by using the '983 Accused Products in their intended and ordinary manner, as directed and instructed by Defendants, and those customers and end users are direct infringers.

117.    Defendants provide information, instructions, and technical support to their customers and end users, including product manuals, user guides, support articles, tutorials, in-product guidance, brochures, videos, demonstrations, training, and website materials, that encourage their customers and end users to purchase the '983 Accused Products and instruct them to use the '983 Accused Products in a manner that directly infringes the '983 Patent, including the published documentation cited above. This claim for induced infringement is directed to Defendants' conduct on and after the Knowledge Date.

118.    Defendants have also contributorily infringed and continue to contributorily infringe the '983 Patent under 35 U.S.C. § 271(c). With knowledge of the '983 Patent since at least the Knowledge Date, Defendants have offered to sell, sold, and/or imported within the United States a component of the patented invention, namely the SmartThings application and platform software and the Samsung Account service software, including the device-registration, code-generation, code-scanning, invitation, and account-linked response modules supplied by Defendants for installation and use on the '983 Accused Products, comprising the on-device function that generates a scannable code from information held in the user's Samsung Account. That component constitutes a material part of the invention claimed in the '983 Patent, because it is the component that binds the code to the account-held settings, generates invitation and registration codes, and returns the responsive information upon a scan. Defendants know that component to be especially made and especially adapted for use in an infringement of the '983

Patent. On information and belief, that component is not a staple article or commodity of commerce suitable for substantial non-infringing use, because it operates only with Defendants' own devices and account services and has no function apart from generating, scanning, and acting upon system-linked codes in the manner set forth in Exhibit K, and any non-infringing use of that component is at most occasional, impractical, or experimental rather than substantial. This claim for contributory infringement is directed to Defendants' conduct on and after the Knowledge Date.

119. On information and belief, Defendants' infringement of the '983 Patent has been, and continues to be, willful. Defendants knew of the '983 Patent as of the Knowledge Date; after acquiring that knowledge, Defendants continued to make, use, test, sell, offer for sale, and/or import the '983 Accused Products; and in doing so Defendants knew, or should have known, that their conduct amounted to infringement of the '983 Patent. On information and belief, Defendants' continued conduct after the Knowledge Date was subjectively willful, in that Defendants proceeded with knowledge of a high risk of infringement and deliberately or recklessly disregarded that risk, including because this Complaint and the claim chart incorporated into this Count identify the asserted claim, the accused functionality, and the manner in which that functionality meets each limitation of the asserted claim. Defendants' willful infringement supports an award of enhanced damages up to three times the amount found or assessed, pursuant to 35 U.S.C. § 284.

120. Plaintiff has been damaged, and continues to be damaged, by Defendants' infringement of the '983 Patent, and is entitled to recover from Defendants damages adequate to compensate for that infringement, in no event less than a reasonable royalty for the use made of the inventions by Defendants, together with interest and costs as fixed by the Court, pursuant to 35 U.S.C. § 284.

121.    Defendants' infringement of the '983 Patent has caused and, unless enjoined by this Court pursuant to 35 U.S.C. § 283, will continue to cause Plaintiff irreparable injury and damage for which Plaintiff has no adequate remedy at law.

122.    The representative claim chart attached hereto as Exhibit K describes how the elements of exemplary claim 1 of the '983 Patent are infringed by a representative Accused Product. Exhibit K is incorporated herein by reference. The chart is illustrative rather than exhaustive, and it is representative of the '983 Accused Products, which implement the accused functionality in the same manner. The chart provides details regarding only one example of Defendants' infringement, and only as to a single patent claim, and Plaintiff reserves the right to provide greater detail and scope through its Disclosure of Asserted Claims and Infringement Contentions at the time required by the Court's Docket Control Order and the Rules of Practice for Patent Cases before the Eastern District of Texas (P.R. 3-1).

123.    On information and belief, Defendants derive substantial revenue, directly and indirectly, from making, using, testing, selling, offering for sale, and importing the '983 Accused Products in this District and elsewhere in the United States.

## COUNT VI

### (INFRINGEMENT OF U.S. PATENT NO. 12,393,809)

124.    Plaintiff restates and realleges each of the preceding paragraphs of this Complaint, which are incorporated by reference as if fully set forth herein.

125.    Defendants, under 35 U.S.C. § 271(a), have directly infringed and continue to directly infringe, literally and/or under the doctrine of equivalents, one or more claims of the '809 Patent, including without limitation at least exemplary claim 1, by making, using, testing, selling, offering for sale, and/or importing into the United States the "'809 Accused Products," which

include Samsung Galaxy Smartphones that carry a system-linked readable code associated with an action setting, and all other Accused Products that infringe in the same general way, without authority or license from Plaintiff. The '809 Accused Products include such products and services made, used, tested, sold, offered for sale, and/or imported from at least the August 19, 2025 issuance of the '809 Patent to the present.

126. Exemplary claim 1 of the '809 Patent recites: "A system comprising: an item comprising a system-linked readable code associated with an action setting; a computer system configured to: receive a customized information; generate the action setting relating to the customized information; generate the system-linked readable code configured to be associated with the action setting; associate the receiving of the system-linked readable code with a computerized response; and activate the computerized response responsive to a computerized device receiving the system-linked readable code; and wherein the computerized response activated by the action setting comprises one or more computerized actions, the one or more computerized actions comprising generating information derived from the customized information, wherein the information derived from the customized information is not the same as the customized information."

127. The '809 Accused Products embody the system claimed in the '809 Patent, comprising an item comprising a system-linked readable code associated with an action setting, together with a computer system configured to perform the recited acts. Each Galaxy Smartphone is an item that carries a system-linked readable code associated with an action setting, such as a contact-sharing or network-connection action setting.

128. In ordinary operation, the computer system is configured to receive a customized information, generate the action setting relating to the customized information, generate the

49

system-linked readable code configured to be associated with the action setting, associate the receiving of the system-linked readable code with a computerized response, and activate the computerized response responsive to a computerized device receiving the system-linked readable code, wherein the computerized response comprises one or more computerized actions comprising generating information derived from the customized information that is not the same as the customized information.

129.    Defendants use the system claimed in the '809 Patent within the meaning of 35 U.S.C. § 271(a) by putting that system into service, that is, by controlling the system as a whole and obtaining benefit from it. Defendants design and supply the '809 Accused Products, operate the Samsung Account and SmartThings services that receive the customized information, generate the action setting and the system-linked readable code, and activate the computerized response, and obtain the benefit of account enrollment, device registration, and continuing service relationships each time the system operates. Defendants also make and test the claimed system within the United States.

130.    Defendants have also indirectly infringed and continue to indirectly infringe the '809 Patent by actively inducing direct infringement by third parties under 35 U.S.C. § 271(b). With knowledge of the '809 Patent since at least the Knowledge Date, Defendants have knowingly, intentionally, and actively aided, abetted, and induced others, including their customers and end users in this District and throughout the United States, to directly infringe at least one claim of the '809 Patent, with the specific intent that those third parties infringe. Defendants knew, or should have known, that the acts they induced constitute infringement of the '809 Patent. Defendants' customers and end users directly infringe the '809 Patent by using the '809 Accused Products in

their intended and ordinary manner, as directed and instructed by Defendants, and those customers and end users are direct infringers.

131.    Defendants provide information, instructions, and technical support to their customers and end users, including product manuals, user guides, support articles, tutorials, in-product guidance, brochures, videos, demonstrations, training, and website materials, that encourage their customers and end users to purchase the '809 Accused Products and instruct them to use the '809 Accused Products in a manner that directly infringes the '809 Patent, including the published documentation cited above. This claim for induced infringement is directed to Defendants' conduct on and after the Knowledge Date.

132.    Defendants have also contributorily infringed and continue to contributorily infringe the '809 Patent under 35 U.S.C. § 271(c). With knowledge of the '809 Patent since at least the Knowledge Date, Defendants have offered to sell, sold, and/or imported within the United States a component of the patented invention, namely the SmartThings application and platform software and the Samsung Account service software, including the device-registration, code-generation, code-scanning, invitation, and account-linked response modules supplied by Defendants for installation and use on the '809 Accused Products, comprising the on-device function that generates a scannable code from information held in the user's Samsung Account. That component constitutes a material part of the invention claimed in the '809 Patent, because it is the component that binds the code to the account-held settings, generates invitation and registration codes, and returns the responsive information upon a scan. Defendants know that component to be especially made and especially adapted for use in an infringement of the '809 Patent. On information and belief, that component is not a staple article or commodity of commerce suitable for substantial non-infringing use, because it operates only with Defendants'

own devices and account services and has no function apart from generating, scanning, and acting upon system-linked codes in the manner set forth in Exhibit L, and any non-infringing use of that component is at most occasional, impractical, or experimental rather than substantial. This claim for contributory infringement is directed to Defendants' conduct on and after the Knowledge Date.

133.    On information and belief, Defendants' infringement of the '809 Patent has been, and continues to be, willful. Defendants knew of the '809 Patent as of the Knowledge Date; after acquiring that knowledge, Defendants continued to make, use, test, sell, offer for sale, and/or import the '809 Accused Products; and in doing so Defendants knew, or should have known, that their conduct amounted to infringement of the '809 Patent. On information and belief, Defendants' continued conduct after the Knowledge Date was subjectively willful, in that Defendants proceeded with knowledge of a high risk of infringement and deliberately or recklessly disregarded that risk, including because this Complaint and the claim chart incorporated into this Count identify the asserted claim, the accused functionality, and the manner in which that functionality meets each limitation of the asserted claim. Defendants' willful infringement supports an award of enhanced damages up to three times the amount found or assessed, pursuant to 35 U.S.C. § 284.

134.    Plaintiff has been damaged, and continues to be damaged, by Defendants' infringement of the '809 Patent, and is entitled to recover from Defendants damages adequate to compensate for that infringement, in no event less than a reasonable royalty for the use made of the inventions by Defendants, together with interest and costs as fixed by the Court, pursuant to 35 U.S.C. § 284.

135.    Defendants' infringement of the '809 Patent has caused and, unless enjoined by this Court pursuant to 35 U.S.C. § 283, will continue to cause Plaintiff irreparable injury and damage for which Plaintiff has no adequate remedy at law.

136.   The representative claim chart attached hereto as Exhibit L describes how the elements of exemplary claim 1 of the '809 Patent are infringed by a representative Accused Product. Exhibit L is incorporated herein by reference. The chart is illustrative rather than exhaustive, and it is representative of the '809 Accused Products, which implement the accused functionality in the same manner. The chart provides details regarding only one example of Defendants' infringement, and only as to a single patent claim, and Plaintiff reserves the right to provide greater detail and scope through its Disclosure of Asserted Claims and Infringement Contentions at the time required by the Court's Docket Control Order and the Rules of Practice for Patent Cases before the Eastern District of Texas (P.R. 3-1).

137.   On information and belief, Defendants derive substantial revenue, directly and indirectly, from making, using, testing, selling, offering for sale, and importing the '809 Accused Products in this District and elsewhere in the United States.

## COMPLIANCE WITH 35 U.S.C. § 287

138.   Plaintiff has complied with the requirements of 35 U.S.C. § 287(a). With respect to each of the Patents-in-Suit, Plaintiff has not made, offered for sale, or sold within the United States, and has not imported into the United States, any product that is subject to the marking requirement of 35 U.S.C. § 287(a). On information and belief, no licensee of, or other person authorized by, Plaintiff has done so.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor and against Defendants, and grant the following relief:

A.      A judgment that Defendants have directly infringed, literally and/or under the doctrine of equivalents, and continue to directly infringe, one or more claims of each of the Patents-in-Suit under 35 U.S.C. § 271(a);

B.      A judgment that Defendants have actively induced infringement, and continue to actively induce infringement, of one or more claims of each of the Patents-in-Suit under 35 U.S.C. § 271(b);

C.      A judgment that Defendants have contributorily infringed, and continue to contributorily infringe, one or more claims of U.S. Patent Nos. 11,630,976, 12,093,760, 12,164,983, and 12,393,809 under 35 U.S.C. § 271(c);

D.      A judgment that Defendants' infringement of each of the Patents-in-Suit has been, and continues to be, willful;

E.      A judgment and order requiring Defendants to pay Plaintiff damages adequate to compensate Plaintiff for Defendants' infringement of the Patents-in-Suit, in no event less than a reasonable royalty for the use made of the inventions by Defendants, pursuant to 35 U.S.C. § 284, including supplemental damages for any continuing post-verdict infringement through entry of final judgment, with an accounting as needed for any infringing sales or activities not presented at trial;

F.      A judgment and order that the damages award be enhanced up to three times the amount found or assessed, pursuant to 35 U.S.C. § 284, in view of Defendants' willful infringement;

G.      A judgment declaring this an exceptional case within the meaning of 35 U.S.C. § 285 and awarding Plaintiff its reasonable attorney fees;

H.      A judgment and order requiring Defendants to pay Plaintiff pre-judgment and post-judgment interest on the damages awarded;

I.      A judgment and order awarding Plaintiff a compulsory ongoing royalty for any continuing infringement after final judgment;

J.      A permanent injunction restraining and enjoining Defendants and their officers, directors, agents, servants, employees, attorneys, parents, subsidiaries, affiliates, divisions, successors, and assigns, and all those in privity or active concert or participation with any of them, from directly or indirectly infringing the Patents-in-Suit;

K.      A judgment and order awarding Plaintiff its costs and expenses incurred in this action; and

L.      Such other and further relief, at law or in equity, as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a trial by jury on all issues and claims so triable.

## RESERVATION OF RIGHTS

Plaintiff's investigation is ongoing, and material information regarding the design, operation, and sales of the Accused Products remains in the sole possession of Defendants or of third parties and will be obtained through discovery in this action. Plaintiff expressly reserves the right to amend or supplement this Complaint, including its identification of asserted claims and Accused Products, in accordance with Federal Rule of Civil Procedure 15.

Dated: August 6, 2026

Respectfully submitted,

By: */s/ Erick S. Robinson*

Erick S. Robinson (Lead Counsel)
Texas Bar No. 24039142
Gregory Love
Texas Bar No. 24013060
CHERRY JOHNSON SIEGMUND JAMES PC
104 E Houston Street, Suite 115
Marshall, Texas 75670
Telephone: (713) 498-6047
Facsimile: (713) 583-9737
erobinson@cjsjlaw.com
glove@cjsjlaw.com

Mark D. Siegmund
Texas Bar No. 24117055
CHERRY JOHNSON SIEGMUND JAMES PC
Bridgeview Center
7901 Fish Pond Road, 2nd Floor
Waco, Texas 76710
Telephone: (254) 732-2242
Facsimile: (866) 627-3509
msiegmund@cjsjlaw.com

*Attorneys for Plaintiff*
*CRISPERA J1 ASSETS LLC*